ACCEPTED
03-15-00349-CV
7614310
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/30/2015 10:49:24 AM
JEFFREY D. KYLE
CLERK

CASE NO. 03-15-00349-CV

_____

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT
AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/30/2015 10:49:24 AM
JEFFREY D. KYLE
Clerk

_____

Shamrock Psychiatric Clinic, P.S.
Appellant,

v.

Texas Department of Health and Human Services; Chris Traylor, Executive
Commissioner; and Stuart Bowen, Inspector General,
Appellees.

_____

On Appeal from Cause No. D-1-GN-14-001833; 126th Judicial District
Court of Travis County, Texas, Honorable Judge Orlinda Naranjo Presiding.

_____

**APPELLEES' BRIEF**

_____

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General
for Civil Litigation

DAVID A. TALBOT, JR.
Chief, Administrative Law Division

ORAL ARGUMENT REQUESTED

EUGENE A. CLAYBORN
State Bar No. 00785767
Assistant Attorney General
Deputy Chief, Administrative Law Division
OFFICE OF THE TEXAS ATTORNEY GENERAL
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-3204
Facsimile: (512) 320-0167

Attorneys for Appellees

October 30, 2015

# IDENTITIES OF PARTIES AND COUNSEL

## ATTORNEYS FOR APPELLANT, SHAMROCK PSYCHIATRIC CLINIC, P.S.:

Jason Ray
State Bar No.: 24000511
Jennifer S. Riggs
State Bar No. 16922300
Eugene Franklin Hopkins IV
State Bar No. 24059968
RIGGS ALESHIRE & RAY, P.C.
506 W. 14th St., Suite A
Austin, Texas 78701
Telephone:   (512) 457-9806
Facsimile:   (512) 457-9066
jray@r-alaw.com
jriggs@r-alaw.com


## ATTORNEYS FOR APPELLEES, TEXAS DEPARTMENT OF HEALTH AND HUMAN SERVICES; CHRIS TRAYLOR, EXECUTIVE COMMISSIONER; AND STUART BOWEN, INSPECTOR GENERAL:

Eugene A. Clayborn
State Bar No.: 00785767
Assistant Attorney General
Deputy Chief, Administrative Law Division
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Capitol Station
Austin, Texas   78711-2548
Telephone:   (512) 475-3204
Facsimile:   (512) 320-0167
eugene.clayborn@texasattorneygeneral.gov

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL................................................................ ii

TABLE OF CONTENTS ............................................................................................. iii

TABLE OF AUTHORITIES..........................................................................................v

RECORD AND PARTY REFERENCES .................................................................. viii

STATEMENT OF THE CASE ................................................................................... viii

REQUEST FOR ORAL ARGUMENT....................................................................... ix

ISSUES PRESENTED FOR REVIEW ....................................................................... ix

I. BACKGROUND AND PROCEDURAL HISTORY .........................................1

II. SUMMARY OF THE ARGUMENT ..............................................................6

III. ARGUMENT AND AUTHORITIES ..............................................................6

    A.    HHSC-OIG does not have a nondiscretionary duty to amend its administrative pleading to assert an overpayment claim and the SOAH ALJ does not have a nondiscretionary duty to reinstate the payment hold case. ....................................................................................6

        1.    Email communications and documents dated 10/2/13, 10/4/13, 10/7/13, and 10/9/13 do not create a nondiscretionary duty that requires the "OIG to amend its pleading to assert an overpayment claim" or that requires the SOAH ALJ to reinstate the payment hold case. ...................................................................................7

        2.    Tex. R. Civ. P. 306c and Tex. R. App. P. 27.2 do not create a nondiscretionary duty requiring HHSC-OIG to reinstate the payment hold case on the SOAH docket. .......................................8

        3.    TRCP 11 and/or 1 TAC § 155.415 do not create a nondiscretionary duty for the SOAH ALJ to reinstate the payment hold case. ...........11

        4.    HHSC-OIG's withdrawal of its payment hold claim did not create a nondiscretionary duty to release funds that may have been withheld and used to satisfy a portion of the debt owed the State of Texas. ........................................................................................15

    B.  Appellant's request for mandamus relief is an impermissible collateral attack on a final unappealable agency order.........................................19

        1.    SOAH ORDER NO. 11 dismissing the administrative contested case hearing is final and unappealable. ................................................19

iii

2.   The overpayment sanction is not only final and unappealable but also a delinquent debt owed the State of Texas. .......................................21

3.   Appellant failed to exhaust its administrative remedies. ....................21

4.   Appellant's suit constitutes an impermissible collateral attack on final agency actions................................................................................24

CONCLUSION AND PRAYER.......................................................................25

CERTIFICATE OF COMPLIANCE ................................................................26

CERTIFICATE OF SERVICE.........................................................................27

iv

# TABLE OF AUTHORITIES

**Cases**

*Bandera Downs, Inc., v. Alvarez,*
  824 S.W.2d 319 (Tex. App.—San Antonio 1992, no writ)................................22

*Brighton v. Koss,*
  415 S.W.3d 864 (Tex. 2013) ..........................................................................10

*Castillo v. Tex. Bd. Prof'l Eng'rs,*
  No. 03-10-00124-CV, 2010 WL 5129127 at *2 (Tex. App.—Austin Dec. 14,
  2010) (mem. op.) ...................................................................... passim

*Chocolate Bayou Water Co. & Sand Supply v. Tex. Natural Res. Conservation Comm'n,*
  124 S.W.3d 844 (Tex. App.—Austin 2003, pet. denied)............................. 21, 24

*El Paso Elec. Co. v. Pub. Util. Comm'n of Tex.,*
  715 S.W.2d 734 (Tex. App.—Austin 1986, writ ref'd n.r.e.) ..............................10

*Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.,*
  96 S.W.3d 519 (Tex. App.—Austin, 2002 pet. denied)............................... 22, 23

*Gulf State Utils., Co. v. Coalition of Cities for Affordable Util. Rates,*
  883 S.W.2d 739 (Tex. App.—Austin 1994) (Powers, J., dissenting, rev'd on other
  grounds, 947 S.W.2d 887 (Tex. 1997))...............................................................24

*Janek v. Harlingen Family Dentistry, P.C.,*
  451 S.W.3d 97FN. 3 (Tex. App.—Austin 2014, no pet.) ........................... 17, 18

*Lesikar v. Rappeport,*
  33 S.W.3d 282 (Tex. App.—Texarkana 2000, pet. denied)................................24

*Lindsay v. Sterling,*
  690 S.W.2d 560 (Tex. 1985) ...........................................................................22

*Lopez v. Pub. Util. Comm'n of Tex.,*
  816 S.W.2d 776 (Tex. App.—Austin 1991, writ denied) ........................... 23, 24

*Stoner v. Massey*,
    586 S.W.2d 843 (Tex. 1979) ................................................................6

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
    852 S.W.2d 440 (Tex. 1993) ..............................................................25

*Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*,
    51 S.W.3d 293 (Tex. 2001) ................................................................22

*Yamaha Motor Corp., U.S.A. v. Motor Vehicle Div., Tex. Dep't of Transp.*,
    860 S.W.2d 223 (Tex. App.—Austin 1993, writ denied) ....................23


**Statutes**
Tex. Gov't Code
    § 311.034 (West 2013) ........................................................................13
    § 531.120 ...........................................................................................8
    § 531.120(a) ........................................................................................8
    § 531.1201 ..........................................................................................7
    § 531.1201(a) (Vernon's 2014) ........................................ 7, 9, 13, 14, 21
    §§ 2001.143, .146, .147 (West 2013) ................................................13
    § 2001.171 (West 2014) ....................................................................22
    § 2001.176(a) ............................................................................. viii, 20

**Administrative Procedure Act (APA)**
    § 2001.143 .................................................................... 11, 13, 19
    § 2001.146 ...........................................................................................13
    § 2001.147 ...............................................................11, 12, 13, 19
    § 2001.176(a) ...............................................................11, 19, 20, viii

**Rules**
1 Tex. Admin. Code
    § 155.415 ...................................................................... vii, 11
    § 155.503(c)(1) (West 2014) ....................................viii, 12, 14, 19, 20
    § 371.1615(d) ........................................................................................9
    § 371.1617(b) (2012) ............................................................. viii, 16
    § 371.1617(e) ......................................................................................17
    § 371.1711(d)(3) (West 2012) ............................................. 13, 14, 21

**Tex. R. App. P.**

Tex. R. App. P. 27.2 ................................................................. ix, 10

**Tex. R. Civ. P.**

Tex. R. Civ. P. 11 ................................................................. ix, 13
Tex. R. Civ. P. 306c ............................................................. ix, 8, 10

# RECORD AND PARTY REFERENCES

References to the Clerk's Record will be "C.R. ___."

Appellant Shamrock Psychiatric Clinic, P.S. will be referred to as "Shamrock."

Appellees Texas Health and Human Services Commission, Chris Traylor, Executive Commissioner, and Stuart Bowen, Inspector General will collectively be referred to as "HHSC-OIG" or "Appellees."

# STATEMENT OF THE CASE

In this case, the trial court dismissed the underlying suit for lack of subject matter jurisdiction and denied "all other claims," including Appellants request for mandamus relief because no ministerial duty exists and Appellant failed to exhaust administrative remedies.

In the underlying suit, Shamrock received the Final Notice of Overpayment on December 2, 2013. December 17, 2014 was the deadline to request an administrative contested case hearing. On January 2, 2014, Shamrock submitted a written request for an administrative contested case hearing appealing the Final Notice of Overpayment. Since Shamrock's request to appeal was untimely, the overpayment sanction became a final and unappealable "debt in favor of the State of Texas" pursuant to 1 TAC § 371.1617(b).

Shamrock also failed to properly invoke the trial court's jurisdiction. Specifically, in the underlying proceeding, the Administrative Law Judge (ALJ) dismissed Shamrock's administrative case from the SOAH docket pursuant to 1 TAC § 155.503(c)(1) (West 2014). Also, SOAH Order No. 11 (Reconsidering and Granting Motion to Dismiss) was signed and served on March 3, 2013. Yet, Shamrock failed to file a motion for rehearing on or before the March 24, 2014 deadline. As a result, the SOAH Order No. 11 became final and unappealable.

Even if the Court was to construe Shamrock's Motion to Reconsider Order No. 11 to be a motion for rehearing, the ALJ issued SOAH Order No. 12 that overruled the alleged motion for rehearing on March 19, 2014. Yet, Shamrock failed to satisfy the jurisdictional prerequisites of § 2001.176(a) because Shamrock

filed suit in district court on June 12, 2014 seeking judicial review of the administrative case well beyond the proper time limits.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 39, Texas Rules of Appellate Procedure, Appellees request oral argument in this case. Appellees believe that oral argument will be beneficial to the court, given the complexity and novelty of the legal issues identified herein.

## ISSUES PRESENTED FOR REVIEW

1. Whether certain email communications and documents, Tex. R. Civ. P. 306c, Tex. R. App. P. 27.2, Tex. R. Civ. P. 11, 1 TAC § 155.415, or the OIG's withdrawal of payment hold claims create nondiscretionary duties such that mandamus should lie.

2. Whether Appellant's request for mandamus relief is an impermissible collateral attack on a final unappealable agency order.

CASE NO. 03-15-00349-CV
_____

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT
AT AUSTIN, TEXAS
_____

Shamrock Psychiatric Clinic, P.S.
Appellants,

v.

Texas Department of Health and Human Services; Chris Traylor, Executive
Commissioner; and Stuart Bowen, Inspector General,
Appellees.

_____
On Appeal from Cause No. D-1-GN-14-001833; 126th Judicial District
Court of Travis County, Texas, Honorable Judge Orlinda Naranjo Presiding.
_____

**APPELLEES' BRIEF**
_____

TO THE HONORABLE JUSTICES OF THE THIRD COURT OF APPEALS:

COMES NOW Texas Health and Human Services Commission, Chris

Traylor, Executive Commissioner, and Stuart Bowen, Inspector General

(collectively referred to as "HHSC" or "Appellees"), in this cause, by and through

their attorneys of record the Texas Attorney General Ken Paxton and the

undersigned Assistant Attorney General, and file Appellees' Brief.

**I. BACKGROUND AND PROCEDURAL HISTORY**

Health and Human Services Commission-Office of Inspector General

(HHSC-OIG) served its "Notice of Prepayment Review" on January 16, 2013.   C.R.

1

92. HHSC-OIG served its "Notice of Payment Hold" on January 24, 2013. C.R. 93. On February 4, 2013, Shamrock served its request for an expedited informal review and an expedited administrative contested case hearing regarding the "Notice of Payment Hold." C.R. 95. On February 7, 2013, HHSC-OIG served its "Notice of Informal Review." C.R. 97. The informal review was held on February 15, 2013.

On February 14, 2013, HHSC-OIG served it "Notice of Potential Overpayment" in the amount of $2,603,315.00. C.R. 102. The payment hold was docketed with SOAH on February 19, 2013. The HHSC-OIG filed its "Complaint" with SOAH on February 26, 2014, alleging that HHSC-OIG is required to suspend all payments to the provider based on Shamrock's alleged violations. C.R. 105. On June 18, 2013, the SOAH ALJ issued "Order No. 3, Continuing Hearing, Changing Venue to Austin, and Ordering Parties to Submit Scheduling Order." C.R. 113.

On September 17, 2013, Enrique Varela sent an email to Son Tran, which reads, "We have the payment hold case coming up pretty fast … Here is what I propose. We send you the final notice of overpayment and we set the overpayment case at SOAH, which won't have a hearing date until Spring 2014, then we now can consolidate both case. Since the new legislation came down, providers are now entitled to have the overpayment hearing at SOAH as opposed to HHSC appeals."

2

C.R. 116. On September 20, 2013, Son Tran sent an email to Enrique Varela, which reads, "Sorry for the late response. Let me talk with the client and I will let you know next week…" C.R. 117. On October, 2, 2013, Enrique Varela sent an email to Son Tran, which reads, "I wanted to reach out to see if you are able to determine whether your client would prefer to go directly to the overpayment hearing." C.R. 117. October 3, 2013, Son Tran sent an email to Enrique Varela, cc: to Windi Pastorini and Steve Johnson, which reads, "I am still waiting on a decision by Dr. Ravichandran." C.R. 117. On October 4, 2013, Son Tran sent an email to Enrique Varela, cc: to Windi Pastorini and Steve Johnson, which reads, "I have discussed your proposal with my client and he has agreed. Let's go ahead with the notice of overpayment, set it at SOAH, and consolidate both cases. Let me know when you receive this email and if I need to do anything." C.R. 117.

On October 7, 2013, Steve Johnson sent an email to Son Tran and Enrique Varela, cc: Windi Pastorini and Karen Pettigrew, which reads, "I will check with SOAH to see whether they want us to docket a separate case then consolidate or just file the overpayment case in the same case number as the payment hold (my preference). I believe we could be ready for a hearing on the overpayment issue in about 90 days. Do you have an idea of when you and your client would want to have that hearing? We have several open dates in January, 2014." C.R. 118. On October 7, 2013, Son Tran sent an email to Steve Johnson, cc: Enrique Varela, Windi

3

Pastorini, and Karen Pettigrew, which reads, "[W]e may need more than 90 days for the hearing.   Ms. Pastorini and I will call you later this week to discuss the case." C.R. 118.

On October 9, 2013, HHSC-OIG filed "Respondent's Status Report," in the SOAH payment hold appeal which reads, "[T]he purpose of the hearing is to determine whether a program violations exists to warrant the suspension of payment (payment hold) to Shamrock Psychiatric Clinic…In addition to the payment hold, Respondent is seeking recoupment of payments, which HHSC-OIG alleges Petitioner was not entitled to receive….Counsels for Respondent and Petitioner have agreed to consolidate both the payment hold and the overpayment into one proceeding…Shamrock has opted to proceed to the overpayment hearing there at SOAH.   At this point, without the court's objection, HHSC-OIG would like to simply file an amended pleading reflecting the consolidated issues…The parties would like input from the court on how to proceed."   C.R. 120-121.

On October 21, 2013, SOAH Order No. 5 was entered, which reads, "[T]he parties requested a prehearing conference to consider how to proceed with discovery pertaining to the overpayment issues in light of the fact that the parties have agreed to consolidate the payment hold and overpayment issues into one proceeding." C.R. 125.

On November 25, 2013, HHSC-OIG served its Final Notice of Overpayment ("FNOP"). Final overpayment amount is $1,611,709.00. C.R. 128. On December 2, 2013, Shamrock, via its attorney of record, received HHSC-OIG's FNOP. December 17, 2013 was the deadline for Shamrock to request an appeal of the FNOP. C.R. 128.

On January 2, 2014, Pastorini faxed correspondence to SOAH & Kevin Heyburn which reads, "On February 4, 2013, we filed and submitted for an appeal of the allegations regarding the payment hold and the overpayment…please let this letter serve as our second formal written request for an appeal of this matter." C.R. 135.

On January 3, 2014, HHSC-OIG filed its motion to dismiss the payment hold appeal without prejudice. C.R. 140. On January 14, 2014, SOAH issued "Order No. 8, Denying Motion to Dismiss." C.R. 150. On March 3, 2014, SOAH issued "Order No. 11, Reconsidering and Granting Motion to Dismiss." C.R. 155. On March 5, 2014, Shamrock filed "Petitioner's Motion to Reconsider Order No. 11 and Request for a Hearing." C.R. 164.

"Respondent's Reply to Petitioner's Motion to Reconsider Order No. 11 and Request for a Hearing" was filed on March 10, 2014. C.R. 178. "Petitioner's Motion to Strike OIG's Letter Response and Reply to Same" was filed on March 11, 2014. C.R. 187. "Respondent's Reply to Petitioner's Motion to Strike OIG's

5

Letter Response and Reply to Same" was filed on March 11, 2014. C.R. 192. On March 19, 2014, SOAH issued "Order No. 12, Denying Motion to Reconsider Order No. 11." C.R. 196. March 24, 2014 was the deadline for Shamrock to file its Motion for Rehearing on Order No. 12. C.R. at 3-22.

On June 12, 2014, Plaintiff's Original Petition was filed in district court. On May 6, 2015, the trial court dismissed the suit for lack of subject matter jurisdiction and denied "all other claims." C.R. at 205.

## II. SUMMARY OF THE ARGUMENT

The trial court correctly dismissed the suit and denied Appellant's request for mandamus relief because no ministerial duty exists and Appellant failed to exhaust administrative remedies.

## III. ARGUMENT AND AUTHORITIES

**A. HHSC-OIG does not have a nondiscretionary duty to amend its administrative pleading to assert an overpayment claim and the SOAH ALJ does not have a nondiscretionary duty to reinstate the payment hold case.**

In this case, Appellant asked the trial court to issue a writ of mandamus compelling HHSC-OIG to perform an act which the agency does not have a legal duty to perform. A common law mandamus action has three requisites: a legal duty to perform a nondiscretionary act, a demand for performance, and a refusal. *Stoner v. Massey*, 586 S.W.2d 843, 846 (Tex. 1979). Appellant's request for mandamus

6

relief failed to meet this standard because it cannot establish that HHSC-OIG had a legal duty to perform a nondiscretionary act. Essentially, Appellant asserts that the trial court, SOAH, and HHSC have nondiscretionary duties to enforce an alleged rule eleven agreement even though Appellant has failed to exhaust its administrative remedies. Since, applicable rules and statutes do not provide for appeal of the SOAH order dismissing the administrative claims, Appellant's suit was properly dismissed for lack of subject matter jurisdiction and "all other claims," including Appellant's mandamus claims, were properly denied.

1. **Email communications and documents dated 10/2/13, 10/4/13, 10/7/13, and 10/9/13 do not create a nondiscretionary duty that requires the "OIG to amend its pleading to assert an overpayment claim" or that requires the SOAH ALJ to reinstate the payment hold case.**

Shamrock alleges that, pursuant to Texas Government Code § 531.1201(a), HHSC-OIG had a ministerial duty to docket the "Final Notice of Overpayment" case at SOAH based on several email communications and documents dated 10/2/13, 10/4/13, 10/7/13, and 10/9/13. Appellant's Brief, p. 10. The foundation of Shamrock's argument rests on the erroneous assertion that the 10/2/13 email communication satisfies the requirements of Tex. Gov't Code § 531.1201. The 10/2/13 email states, "I wanted to reach out to see if you are able to determine whether your client would prefer to go directly to the overpayment hearing." C.R.

7

117.   This email does not meet the requirements of Tex. Gov't Code § 531.120(a).

Specifically, the 10/2/13 email does not include:

(1)  the specific basis for the overpayment or debt;
(2)  a description of facts and supporting evidence;
(3)   a representative sample of any documents that form the basis for the overpayment or debt;
(4)  the extrapolation methodology;
(5)  the calculation of the overpayment or debt amount;
(6)  the amount of damages and penalties, if applicable; and
(7)   a description of administrative and judicial due process remedies, including the provider's right to seek informal resolution, a formal administrative appeal hearing, or both.

Tex. Gov't Code § 531.120.   In stark contrast, the November 25, 2013 "Final Notice

of Overpayment" satisfies the requirements of Tex. Gov't Code § 531.120.   C.R.

128.   As a result, Shamrock's inferences and conclusions based on the email

communications and documents dated 10/2/13, 10/4/13, 10/7/13, and 10/9/13 do not

amount to a ministerial duty and have no merit because Shamrock failed to request

an appeal of the final notice of overpayment timely.

**2. Tex. R. Civ. P. 306c and Tex. R. App. P. 27.2 do not create a nondiscretionary duty requiring HHSC- OIG to reinstate the payment hold case on the SOAH docket.**

Shamrock alleges that its "three appeal/hearing requests made in October

2013 appeal effectively put the OIG on notice of Shamrock's request for a hearing,

and under Tex. R. Civ. P. 306c and Tex. R. App. P. 27.2, were effective."

Appellant's Brief, Page 15.   However, Shamrock's assertion that the alleged "three

8

appeal/hearing requests made in October 2013" conflicts with the assertion it made in the January 2, 2014 letter. Specifically, the January 2, 2014 letter states that "[o]n February 4, 2013, we filed and submitted an appeal of the allegations regarding the payment hold and the overpayment. … **Pursuant to 1 Tex. Admin. Code § 371.1615(d), please let this letter serve as our second formal written request for an appeal of this matter**." Clearly, the January 2, 2014 letter makes no mention of the alleged "three appeal/hearing requests made in October 2013." Needless to say, the test for ministerial duty is not met under such circumstances since there is a fact dispute as to whether Shamrock intended that the "three appeal/hearing requests made in October 2013" constitute notices of appeal before the fact even though the applicable statute provides that "[a] provider must request an appeal under this section not later than the 15th day *after* the date the provider is notified …". [emphasis added]. Tex. Gov't Code § 531.1201(a).

Besides, the relevance of these email communications and documents was fully adjudicated in SOAH Order No. 11. C.R. 155-161. Specifically, SOAH Order No. 11 reflects that the SOAH Judge reconsidered and dismissed the case for the following reasons:

9

Based on the facts listed in the chronology, the ALJ recognizes that OIG asked Shamrock to consolidate the payment hold and recoupment issues, represented to SOAH that the parties had agreed to consolidate both issues into one proceeding in the interest of judicial economy, represented that it preferred to amend its payment hold pleading without getting another docket number, and asked for a continuance so that both issues could be heard together. Some months later, OIG sent formal notice of the recoupment to Shamrock. Shamrock did not file an appeal because it had relied on OIG's commitment to amend its pleadings and the ALJ had already set the hearing on both issues.

**However, even though Shamrock relied on OIG's representation to its detriment, the ALJ cannot proceed to a hearing. OIG has withdrawn the payment hold issue, and it has neither separately referred an overpayment claim to SOAH regarding Shamrock nor amended its pleadings to assert an overpayment claim. The ALJ does not have the authority to require OIG to amend its pleading to assert an overpayment claim in this case. As a result, there is no pending case for which the ALJ could receive and issue a Proposal for Decision. [Emphasis added].**

C.R. 160-161.

Additionally, Shamrock's reliance on the *Brighton v. Koss*, 415 S.W.3d 864 (Tex. 2013) and *El Paso Elec. Co. v. Pub. Util. Comm'n of Tex.*, 715 S.W.2d 734 (Tex. App.—Austin 1986, writ ref'd n.r.e.) is misplaced. Specifically, the "Final Notice of Overpayment" is not an order or judgment rendered in a trial court. Moreover, Shamrock did not file a motion for rehearing after the administrative case was dismissed from the SOAH docket. Therefore, the legal reasoning and analysis of *Brighton* and *El Paso Elec.* relating to TRCP 306c and TRAP 27.2 are not applicable to the present case.

10

**3. TRCP 11 and/or 1 TAC § 155.415 do not create a nondiscretionary duty for the SOAH ALJ to reinstate the payment hold case.**

Based on convoluted and conflated reasoning relating to an alleged Rule 11 agreement, Shamrock asserts that "this court should reverse the district court dismissing the case for want of jurisdiction and instruct the district court to order the OIG to set Shamrock's overpayment case for a hearing at the SOAH." Appellant's Brief, p. 21. In a recent memorandum opinion, however, the Austin Third Court of Appeals asked whether noncompliance with an Administrative Procedure Act (APA) § 2001.147 agreement to modify the APA § 2001.143 (60-day) time limit for rendering a decision voided the agency's final order, thereby modifying the APA § 2001.176(a) (30-day) time limit to file suit seeking judicial review. *Castillo v. Tex. Bd. Prof'l Eng'rs*, No. 03-10-00124-CV, 2010 WL 5129127 at *2 (Tex. App.— Austin Dec. 14, 2010) (mem. op.). One significant fact was that at the time the APA § 2001.147 agreement was entered into there was no related case pending before the district court. Another important fact was that the § 2001.147 agreement was intended to modify the APA § 2001.143 (60-day) time limit. Based on its construction of applicable law, the *Castillo* Court opined that "[t]he directory time limit in section 2001.143(a) … affects only the administrative process within the agency, and modifying it does not alter that." *Castillo* at *5.

11

The applicability of this aspect of the *Castillo* analysis requires this Court to look beyond jurisdictional facts and examine the merits underlying SOAH Order No. 11 which recites the following observations regarding the alleged "consolidation agreement":

> Based on the facts listed in the chronology, the ALJ recognizes that OIG asked Shamrock to consolidate the payment hold and recoupment issues, represented to SOAH that the parties had agreed to consolidate both issues into one proceeding in the interest of judicial economy, represented that it preferred to amend its payment hold pleading without getting another docket number, and asked for a continuance so that both issues could be heard together. Some months later, OIG sent formal notice of the recoupment to Shamrock. Shamrock did not file an appeal because it had relied on OIG's commitment to amend its pleading and the ALJ had already set the hearing on both issues.
>
> However, even though Shamrock relied on OIG's representations to its detriment, the ALJ cannot proceed to a hearing. OIG has withdrawn the payment hold issue and it has neither separately left an overpayment claim to SOAH regarding Shamrock nor amended its pleadings to assert an overpayment claim. The ALJ does not have authority to require OIG to amend its pleading to assert an overpayment claim in this case. As a result, there is no pending case for which the ALJ could receive evidence and issue a Proposal for Decision. Therefore, the ALJ dismisses this case from SOAH's docket pursuant to 1 TAC § 155.503(c)(1).

C.R. 160-161. Under the Court's reasoning in *Castillo*, the alleged agreement to consolidate hearings in this case does not constitute an enforceable Rule 11 agreement or an enforceable APA § 2001.147 agreement "[b]ecause the parties entered into the agreement during the course of the administrative proceeding, it was governed by the provisions of the APA, not by the rules of civil procedure." *Id.* at

12

*4. Shamrock's alleged consolidation agreement is not governed by the Texas Rules of Civil Procedure because there was no case pending before the district court. *See* Tex. R. Civ. P. 11. Nor does APA § 2001.147 apply because the alleged "consolidation agreement" was not intended to modify the time limits set forth APA § 2001.143 or § 2001.146. Tex. Gov't Code §§ 2001.143, .146, .147 (West 2013).

In the final analysis, there was no evidence before the trial court that can be construed to be a Rule 11 agreement that waives the requirement of a written appeal under Tex. Gov't Code § 531.1201(a) (Vernon's 2014) and 1 TAC § 371.1711(d)(3) (West 2012). In other words, even if it could be argued that the status report amounts to an enforceable Rule 11 agreement, it still does not contain any reference to a waiver of the statutory appeal requirements. The Texas Government Code provides that "… a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." *See* Tex. Gov't Code § 311.034 (West 2013). Further, the same provision states that "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." *See* Tex. Gov't Code § 311.034 (West 2013). In this case, Appellant has failed to demonstrate a valid waiver of sovereign immunity to sue Appellee.

Shamrock also argues that "[t]he ALJ was incorrect in her conclusion that she did not have the authority to require the OIG to amend its pleading to assert an overpayment claim in this case or to simply proceed on matters already before her." Appellant's Brief, p. 21. However, the undisputed facts are that the payment hold claims were withdrawn and that the overpayment claims were never filed. As a result, the SOAH ALJ dismissed the case pursuant to 1 TAC § 155.503(c)(1). This provision provides, in pertinent part, that "[a] judge may dismiss a matter from SOAH's docket with or without prejudice if a moving party withdraws its entire claim…" [emphasis added]. In this instance, HHSC-OIG was the "moving party" that withdrew its payment hold claim.

Regardless, the SOAH ALJ considered Shamrock's allegations and did not determine that there was an enforceable agreement pursuant to SOAH's pleadings, rules, and procedures. In fact, the record is devoid of any written document executed by HHSC-OIG that waives, forgives, or otherwise bypasses the requirements of a written request for appeal under Texas Government Code § 531.1201(a) (Vernon's 2014) and 1 Texas Administrative Code (TAC) § 371.1711(d)(3) (West 2012). Instead, the SOAH ALJ dismissed the administrative case because HHSC-OIG could not be ordered to amend its administrative pleadings and there was no overpayment claim pending before SOAH. In the final analysis, the SOAH ALJ's dismissal of the case pursuant to 1 TAC § 155.503(c)(1) is correct.

14

**4. HHSC-OIG's withdrawal of its payment hold claim did not create a nondiscretionary duty to release funds that may have been withheld and used to satisfy a portion of the debt owed the State of Texas.**

Shamrock alleges that the "OIG kept money withheld under the temporary payment hold, and used it in partial satisfaction of the alleged overpayment." Appellant's Brief, p. 22. However, there is no evidence in the record that supports this statement.

The record does show that HHSC-OIG served its "Notice of Prepayment Review" on January 16, 2013. C.R. 92. This notice states that "[t]his administrative action is being taken to prevent future program violations and/or verify compliance with Texas Medicaid program requirements." C.R. 92.

HHSC-OIG served its "Notice of Payment Hold" on January 24, 2013. C.R. 93. This notice states that "HHSC-OIG has determined that prima facie evidence exists to support this payment hold." C.R. 93.

HHSC-OIG served its "Notice of Potential Overpayment" on February 14, 2013. C.R. 102. This notice states that "**[a]s of the date of this notice, HHSC-OIG finds that you received a potential overpayment in the amount of $2,603,315.00**." C.R. 102. This notice also states that "HHSC-OIG will provide separate notice of any final determined overpayment amount." C.R. 103.

HHSC-OIG served its "Final Notice of Overpayment" on November 25, 2013. C.R. 128. This notice states that "[p]ursuant to 1 Tex. Admin. Code § 371.171(c)(2) (2012), HHSC-OIG hereby determines that you received an overpayment in the amount of **$1,611,709.00**." C.R. 128. This notice also states that "you will have 30 days after this notice becomes final to pay the amount of the overpayment, negotiate a payment plan, or file a petition for judicial review. 1 Tex. Admin. Code § 371.1617(b) (2012)." C.R. 130.

None of the aforementioned notices show the amount of funds, if any, that may have been withheld pursuant to the payment hold. None of the aforementioned notices show the amount of withheld funds, if any, that may have been used to satisfy part of the delinquent debt owed the State of Texas. Hence, Shamrocks assertion is not based on any facts from the record. But assuming arguendo that some funds were withheld and offset against the final debt, it does not follow that this result is beyond HHSC's authority. In fact, this remedy is contemplated under applicable law and case law.

As stated previously, the "Final Notice of Overpayment" stated that "you will have 30 days after this notice becomes final to pay the amount of the overpayment, negotiate a payment plan, or file a petition for judicial review. 1 Tex. Admin. Code § 371.1617(b) (2012)." C.R. 130. Since, Shamrock did not settle the debt or seek

16

judicial review of the debt timely, then HHSC-OIG is authorized to "collect funds owed" pursuant to 1 TAC § 371.1617(e).

HHSC-OIG's broad authority to collect on delinquent debt is supported by the Court's analysis in the *Janek* opinion. In *Janek,* the Court recognized (1) "that the relief sought … would not determine any final rights of the parties," (2) that "Texas and federal law permit the temporary hold of Medicaid payments while allegations of fraud are being investigated and litigated," and (3) that the "outcome of this case will not determine any final rights of the parties but only which party will maintain temporary possession of the funds in question while the final rights to them are being adjudicated in a separate proceedings." *Janek v. Harlingen Family Dentistry, P.C.*, 451 S.W.3d 97, 103 FN. 3 (Tex. App.—Austin 2014, no pet.). In this case, Shamrock's final rights were determined when it failed to request a hearing timely and HHSC-OIG's right to collect fully ripened when the debt became delinquent.

However, Appellant's reliance on *Janek v Harlingen Family Dentistry* is misplaced. This case can be distinguished because during a fraud investigation, HHSC-OIG instituted a payment hold against the Harlingen Family Dentistry, a SOAH ALJ determined that there was credible evidence to support a portion of the funds subject to the payment hold, the SOAH ALJ issued a Proposal For Decision including findings and conclusions, and HHSC-OIG adopted the SOAH ALJ's findings and conclusions into a final order. *Id.* at 100. In the instant case, the

SOAH ALJ did not issue a Proposal For Decision regarding the payment hold nor did HHSC-OIG adopt a Proposal For Decision regarding the payment hold.

Moreover, the *Janek* opinion recites that "[t]he dispositive issue in this appeal is whether the administrative order adopted and issued by HHSC, read in conjunction with applicable statutes and regulations, unambiguously required that funds sequestered and held pursuant to the temporary payment hold be released to the Dental Group." *Id.* at 101. In the instant case, SOAH Order No. 11 does not require any "funds sequestered and held pursuant to the temporary payment hold be released" to Shamrock.

Furthermore, the *Janek* Court concluded that "[t]he Dental Group sought only to enforce the agency's existing order that imposed on Janek and Wilson the ministerial duty to release a portion of the funds subject to the payment hold." *Id.* at 103. In the instant case, SOAH Order No. 11 does not impose on HHSC-OIG "the ministerial duty to release a portion of the funds subject to the payment hold."

In the final analysis, the *Janek* Court determined that "[b]ecause the State officials have refused to perform this ministerial duty at the Dental Group's request, the district court correctly issued a writ of mandamus directing them to comply with the final order and take all necessary action to release to the Dental Group the sum of $1,255,195.20." *Id.* at 104. In the instant case, the trial court denied

Shamrock's request for mandamus relief in total because no such ministerial duty exists and because Shamrock failed exhaust available remedies.

**B. Appellant's request for mandamus relief is an impermissible collateral attack on a final unappealable agency order.**

**1. SOAH ORDER NO. 11 dismissing the administrative contested case hearing is final and unappealable.**

In the underlying proceeding, the Administrative Law Judge dismissed Appellant's administrative case from the SOAH docket pursuant to 1 TAC § 155.503(c)(1) (West 2014). The order was signed and served on March 3, 2013. However, Appellant failed to file a timely motion for rehearing, hence, Order No. 11 became final and unappealable.

The *Castillo* opinion also holds that noncompliance with an Administrative Procedure Act (APA) § 2001.147 agreement to modify the APA § 2001.143 (60-day) time limit for rendering an agency decision does not void the Board's final order and does not modify the APA § 2001.176(a) (30-day) time limit to file suit seeking judicial review. *Castillo v. Tex. Bd. Prof'l Eng'rs,* at *2. The *Castillo* Court asked whether Castillo's petition for judicial review was timely under APA § 2001.176(a). *Castillo v. Tex. Bd. Prof'l Eng'rs*, at *2. One significant jurisdictional fact from the case is that when the Board overruled the second motion for rehearing, the Board's order became final and appealable. Another important jurisdictional fact is that Castillo failed to file his petition for review within 30 days

19

of the board's order becoming final and appealable. Based on its construction of applicable law, the *Castillo* Court opined that "[i]n suits against governmental entities, a timely filed petition for judicial review is a statutory prerequisite to suit, so that failure to comply deprives the district court of jurisdiction to review the agency decision." *Id.* at \*3. Applying the law to the key jurisdictional facts, the *Castillo* Court concluded that Castillo failed to file his petition timely, therefore the trial court had no jurisdiction to hear the appeal.

As was the case in *Castillo*, Shamrock also failed to properly invoke the trial court's jurisdiction. Specifically, in the underlying proceeding, the Administrative Law Judge (ALJ) dismissed Shamrock's administrative case from the SOAH docket pursuant to 1 TAC § 155.503(c)(1) (West 2014). Also, SOAH Order No. 11 (Reconsidering and Granting Motion to Dismiss) was signed and served on March 3, 2013. Yet, Shamrock failed to file a motion for rehearing on or before the March 24, 2014 deadline. As a result, the SOAH Order No. 11 became final and unappealable.

Even if the Court construes Shamrock's Motion to Reconsider Order No. 11 to be a motion for rehearing, the ALJ issued SOAH Order No. 12 that overruled the alleged motion for rehearing on March 19, 2014. Yet, Shamrock failed to satisfy the jurisdictional prerequisites of § 2001.176(a) because Plaintiff filed suit in district

20

court on June 12, 2014 seeking judicial review of the administrative case well beyond the applicable time limitations.

### 2. The overpayment sanction is not only final and unappealable but also a delinquent debt owed the State of Texas.

Shamrock received the "Final Notice of Overpayment" on December 2, 2013. December 17, 2014 was the deadline to request an administrative contested case hearing. The record is devoid of any written document executed by HHSC-OIG that waives, forgives, or otherwise bypasses the requirements of a written request for appeal under Texas Government Code § 531.1201(a) (Vernon's 2014) and 1 Texas Administrative Code (TAC) § 371.1711(d)(3)(West 2012). Nevertheless, on January 2, 2014, Shamrock submitted a written request for an administrative contested case hearing appealing the "Final Notice of Overpayment." Since Shamrock's request to appeal was untimely, the overpayment sanction became final and unappealable. Furthermore, since Shamrock failed to settle the debt or seek judicial review of the debt, the debt became delinquent and subject to the collections process.

### 3. Appellant failed to exhaust its administrative remedies.

"It is well settled that a party must exhaust its administrative remedies before seeking judicial review of an agency decision." *Chocolate Bayou Water Co. & Sand Supply v. Tex. Natural Res. Conservation Comm'n*, 124 S.W.3d 844, 852 (Tex.

App.—Austin 2003, pet. denied), citing Tex. Gov't Code Ann. § 2001.171 (West 2014) and *Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294–95 (Tex. 2001). "Unless exhaustion is excused, a trial court has no jurisdiction to act when administrative remedies have not been exhausted. *See Bandera Downs, Inc., v. Alvarez*, 824 S.W.2d 319, 321 (Tex. App.—San Antonio 1992, no writ) *citing Lindsay v. Sterling*, 690 S.W.2d 560, 563–64 (Tex. 1985) (exhaustion is a jurisdictional prerequisite to judicial review that cannot be waived). In fact, the *Bandera Downs* court held "that because Alvarez did not exhaust his administrative remedies before the racing commission, the trial court had no jurisdiction to grant the temporary restraining order enjoining holding the race or the temporary injunction enjoining paying the winners." *See Bandera Downs* at 321. Likewise, the trial court is without subject matter jurisdiction to hear this case.

In *Friends of Canyon Lake*, for example, appellants argued that "it should not be required to exhaust when its challenge of agency action is based upon allegations that the Authority and TNRCC 'exceeded its statutory authority or jurisdiction' or violated a statute. *See Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.,* 96 S.W.3d 519, 527 (Tex. App.—Austin, 2002 pet. denied). However, the Third Court of Appeals agreed "that, notwithstanding these exceptions, FOCL's suits (which have been consolidated in this action) were filed after the TNRCC's issuance of the Amendment, which constitutes a final order, and therefore these

22

exceptions do not control." *Id.* at 527. Similarly, the trial court properly dismissed this case for failure to exhaust administrative remedies.

In the *Yamaha* case, the plaintiff sought judicial review by direct appeal of a final order issued by the Motor Vehicle Division of the Texas Department of Transportation alleging that the Commission had exceeded its statutory authority. *See Yamaha Motor Corp., U.S.A. v. Motor Vehicle Div., Tex. Dep't of Transp.*, 860 S.W.2d 223 (Tex. App.—Austin 1993, writ denied). In *Yamaha*, the Third Court of Appeals opined that "We recognize that in certain limited circumstances, e.g., when an agency acts outside its constitutional or statutory authority, a party may challenge the agency's action independent of the procedural requirements imposed by APTRA in a statutory suit for judicial review . . . This exception, however, allows a party to challenge the agency's actions *prior* to the rendition of a final order." *Id.* at 229 (emphasis in original) (citations omitted). In this case, Appellant failed to raise its ultra vires claim in a timely filed motion for rehearing "prior to the rendition of a final order." Hence, the ultra vires exception to the exhaustion doctrine does not apply in this case.

In *Lopez v. Public Utility Commission*, the plaintiffs prayed for declaratory relief under the Administrative Procedures Act (APA) and the Uniform Declaratory Judgments Act (UDJA) as well as for temporary and permanent injunctive relief against the Texas Public Utility Commission. *See Lopez v. Pub. Util. Comm'n of*

23

*Tex.*, 816 S.W.2d 776, 780 (Tex. App.—Austin 1991, writ denied). In the *Lopez* case, the Third Court of Appeals held that the district court lacked jurisdiction under the doctrine of governmental immunity because the plaintiff failed to file a motion for rehearing with the Commission pursuant to Commission rules. *Id.* at 781–782. On the same grounds, the trial court properly dismissed this case for lack of subject matter jurisdiction.

**4. Appellant's suit constitutes an impermissible collateral attack on final agency actions.**

Appellant's suit constitutes an impermissible collateral attack on a final and unappealable dismissal order and an overpayment sanction. "Collateral attacks upon an agency order may be maintained successfully on one ground alone-that the order is void." *See Chocolate Bayou Water Co. & Sand Supply* at 853, *citing Lesikar v. Rappeport*, 33 S.W.3d 282, 316 (Tex. App.—Texarkana 2000, pet. denied) (*citing Gulf State Utils., Co. v. Coalition of Cities for Affordable Util. Rates,* 883 S.W.2d 739, 758 (Tex. App.—Austin 1994) (Powers, J., dissenting, rev'd on other grounds, 947 S.W.2d 887 (Tex. 1997)). "An agency order may be void in the requisite sense on either of two grounds: 1) the order shows on its face that the agency exceeded its authority, or 2) a complainant shows that the order was procured by extrinsic fraud." *See Gulf States Utils*. at 758.

In this case, neither of these conditions apply to the dismissal order or the overpayment sanction. In this suit, for example, Appellant is seeking judicial review of a final and unappealable agency order, an injunction to avoid the effect of the final and unappealable agency order, and a declaration that the agency action exceeded its authority. Appellant's allegations merely challenge the voidableness or erroneousness of the agency order. In fact, HHSC-OIG has statutory, regulatory, and contractual authority to calculate and recover overpayments. Hence, Appellant's request for declaratory relief would yield "an impermissible advisory opinion, because, rather than remedying actual harm, it would address only a hypothetical injury." *Id.*, *citing Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellees respectfully pray that this Court affirm the trial court's order dismissing this suit of subject matter jurisdiction; and that this Court affirm the trial court's denial of Appellant's request for mandamus relief; and for all such other relief as Appellees shall be entitled to in law or in equity.

Respectfully Submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

DAVID A. TALBOT, JR.
Chief, Administrative Law Division

 */s/ Eugene A. Clayborn*
EUGENE A. CLAYBORN
State Bar No.: 00785767
Assistant Attorney General
Deputy Chief, Administrative Law Division
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Capitol Station
Austin, Texas   78711-2548
Telephone:   (512) 475-3204
Facsimile:    (512) 320-0167
eugene.clayborn@ texasattorneygeneral.gov

*Attorneys for Appellee*

## CERTIFICATE OF COMPLIANCE

I hereby certify compliance with Texas Rules of Appellate Procedure 9 and that there are 5,809 words in this document.   Microsoft Word was used to prepare this filing and calculate the number of words in it.

*/s/ Eugene A. Clayborn*
EUGENE A. CLAYBORN, AAG

26

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on this the 30th day of October, 2015 on the following:

Jason Ray                                    **Via: _Electronic Service_**
State Bar No.: 24000511
Jennifer S. Riggs
State Bar No. 16922300
Eugene Franklin Hopkins IV
State Bar No. 24059968
RIGGS ALESHIRE & RAY, P.C.
506 W. 14th St., Suite A
Austin, Texas 78701
Telephone:   (512) 457-9806
Facsimile:   (512) 457-9066
jray@r-alaw.com
jriggs@r-alaw.com

*Attorneys for Appellant*

                                              */s/ Eugene A. Clayborn*
                                              EUGENE A. CLAYBORN, AAG